Filed 8/25/15  P. v. George CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067420 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI1200784) |
| SAMMIE KALEI GEORGE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County,

Victor R. Stull, Judge.  Affirmed as modified, remanded for further proceedings.

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney

General, Barry J. Carlton and Christopher P. Beesley, Deputy Attorneys General, for

Plaintiff and Respondent.


A jury convicted Sammie Kalei George of attempted criminal threats against

victim Aidee Quinones and found George personally used a deadly or dangerous

weapon during the crime. The trial court sentenced her to two years in prison, but because she had accrued sufficient presentence custody credits, referred her to the parole department. George appeals, contending the trial court erred: (1) by failing to instruct the jury on voluntary intoxication and (2) in its restitution order. We reject her claim of instructional error, but conclude the trial court abused its discretion in its restitution order and remand the matter for a new restitution hearing.

George also asserts, and the Attorney General concedes: (1) the trial court's minutes and abstract of judgment reflect an unauthorized or illegal sentence and should be corrected to reflect the lawful sentence contemplated by the trial court at sentencing; and (2) the trial court intended to impose the minimum restitution fine in effect at the time of George's crime, but failed to do so and that this fine and the parole revocation fine should also be corrected. We agree.

FACTUAL AND PROCEDURAL BACKGROUND

George lived in a house near another home occupied by Quinones, Quinones's husband, her two teenage children, Victor and Jazmin, adult cousin Rodrigo Cabrera and two roommates. On an evening in March 2012, George came to the back door of Quinones's house and frantically knocked, asking to use the telephone. Cabrera refused the request. As George started to walk away, Quinones came out and asked Cabrera what was happening.

George turned around. She was swinging an axe, screaming, "I'm going to kill you, fucking bitch." George continued her threats as Quinones fled inside the house and called 911. George eventually left.

2

DISCUSSION

I. *Voluntary Intoxication Instruction*

George asserts the trial court prejudicially erred when it failed to instruct the jury on voluntary intoxication as a defense negating specific intent. The Attorney General contends George forfeited this claim because an instruction on involuntary intoxication is a pinpoint instruction that defense counsel must request. Even assuming the claim was preserved and the court erred, it is not reasonably likely the jury would have returned a more favorable verdict if the court had provided the voluntary intoxication instruction. Although the record suggests George forfeited this issue, we address it on its merits and conclude any error was harmless.

George was charged with making a criminal threat and assault. A defendant's voluntary intoxication may not be considered in determining whether the defendant committed assault, which is a general intent crime. (*People v. Williams* (2001) 26 Cal.4th 779, 790; *People v. Atkins* (2001) 25 Cal.4th 76, 81.) Voluntary intoxication, however, may be considered in determining whether a defendant had the specific intent to commit the crime of criminal threats or the lesser offense of attempted criminal threats. (*People v. Toledo* (2001) 26 Cal.4th 221, 227-231; *People v. Williams* (1997) 16 Cal.4th 635, 677 (*Williams*).) A voluntary intoxication instruction, however, is akin to a pinpoint instruction to which a defendant is entitled, if at all, only upon request. (*People v. Verdugo* (2010) 50 Cal.4th 263, 295.)

At the hearing regarding jury instructions, the topic of voluntary intoxication came up within the context of the assault instructions which provide that voluntary

3

intoxication was not a defense to assault. (CALCRIM No. 875, 915.) The court decided it would include this sentence because the police had testified they detected the odor of alcohol when they met George. During the discussion of the jury instructions, the issue of voluntary intoxication never arose in any other context. After the jury rendered its verdict, defense counsel stated she had asked the court to instruct on voluntary intoxication as a defense to the threat crimes, the court agreed to so instruct, but the instruction was not given. The court indicated that the issue of voluntary intoxication came up during the first discussion or a later discussion, that it intended to instruct on voluntary intoxication for the specific intent crime, but "Why I didn't, I don't know."

George moved for a new trial noting this issue and stating, without citation to the record, that the trial court had agreed to instruct the jury that voluntary intoxication was a defense to the threat crimes. The People opposed the motion, stating the issue of voluntary intoxication never arose in the context of the threat crimes and the court had no sua sponte duty to instruct on this principle. At the hearing on the motion, the trial court indicated it no longer remembered what had been discussed either on or off the record, but the court accepted defense counsel's representations at face value that it had agreed to instruct on voluntary intoxication and the failure to instruct was error. The court nonetheless denied the new trial, finding the error harmless. We agree.

Our Supreme Court has held "[a] defendant is entitled to such an instruction only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.'"

4

(*Williams*, supra, 16 Cal.4th at p. 677; accord, *People v. Verdugo*, *supra*, 50 Cal.4th at p. 295; *People v. Ramirez* (1990) 50 Cal.3d 1158, 1181.) Stated differently, the fact a defendant may have been drinking before committing a crime does not establish intoxication or require the giving of an instruction on intoxication. Rather, to be entitled to an instruction on voluntary intoxication, the defendant must show not only the consumption of intoxicating substances, but also intoxication to the point the defendant failed to form the requisite intent. (*People v. Ivans* (1992) 2 Cal.App.4th 1654, 1661.)

Here, the record contains some evidence that George may have been under the influence of alcohol when she threatened Quinones. George testified that she was an alcoholic and drank every day. On the day of the incident, she consumed some beer and a pint of vodka by 1:00 p.m., when she stopped drinking. The incident occurred about ten hours later at around 11:00 p.m. Although there is no direct evidence that George continued to drink during these ten hours, when deputies responded to the 911 call made by Quinones at about 11:44 p.m., one of the deputies smelled the odor of alcohol on George. The other deputy smelled alcohol when he entered George's home and noticed that George slurred her speech. Thus, the jury could have reasonably inferred that George drank some alcohol during this ten-hour period.

Without any direct evidence regarding how much George may have drank, or expert testimony, the jury would have been left to speculate whether George was intoxicated at all during the incident. Even assuming, without deciding, the record contained substantial evidence of George's intoxication, the voluntary intoxication

5

instruction would still be unwarranted because, as in *Williams*, there was no evidence of the effect any such intoxication had on George's ability to formulate intent. (*Williams*, *supra*, 16 Cal.4th at pp. 677-678.) We conclude the evidence was insufficient to support an instruction on voluntary intoxication because there was absolutely no evidence George was intoxicated to the point where she was unable to formulate specific intent. (*Ibid.*; *People v. Ivans*, *supra*, 2 Cal.App.4th at p. 1661.) Thus, any error in failing to instruct on voluntary intoxication was harmless.

## II. *Victim Restitution Order*

The prosecutor requested the court order victim restitution in the amount of $8,605, payable to the California Victim Compensation and Government Claims Board (the Board). George argued at the restitution hearing that the victim was not credible, the claim for victim restitution was exaggerated and the records were so completely redacted that defense counsel had no information to use to subpoena records to challenge the validity of the claim. She also urged that the victim's son did not qualify as a derivative victim because he did not observe the crime. At the restitution hearing, the court ordered victim restitution in the amount requested by the prosecutor together with a 10 percent collection fee for a total amount of $9,465.50.

George contends her arguments required the trial court to conduct a more searching inquiry into the validity and legitimacy of the victim restitution claims and required the court to release the records of the Board to her so she could prove that the requested victim restitution amount was inappropriate. Because the trial court did not do either, she argues the court abused its discretion in its victim restitution order.

6

California crime victims have the right to receive restitution for losses attributable to the defendant's actions.  (Cal. Const., art. I, § 28, subd. (b)(13)(B); Pen. Code, § 1202.4, subd. (a)(1), undesignated statutory references are to this code.)  "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct."  (§ 1202.4, subd. (f)(3).)  The types of economic losses recoverable by victims include losses for stolen or damaged property, medical expenses and mental health counseling expenses.  (*Id.* at subd. (f)(3)(A)-(C).)

Where, as here, state funds are used to provide assistance to or on behalf of a victim, "the amount of assistance provided shall be presumed to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered."  (§ 1202.4, subd. (f)(4)(A).)  This language establishes a rebuttable presumption that the amount paid by the Board was proper and "imposes upon defendant the burden to prove the nonexistence of the presumed fact—that is, to prove his conduct is *not* a cause in fact of the Board's payment."  (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 101 (*Lockwood*).)  If a defendant offers evidence tending to rebut the presumption, the defendant may obtain the sealed Board records in order to challenge the presumption.  (§ 1202.4, subd. (f)(4)(C); *Lockwood*, at p. 101.)  The trial court must then "examine the sealed records in camera to determine whether the information is necessary for the defendant to dispute the amount of restitution.  If the court finds that the sealed records are necessary, the defendant is entitled to use *both*

7

his original evidence *and* the sealed material in his effort to rebut the subdivision (f)(4)(A) presumption." (*Lockwood*, at p. 101.)  We review a restitution order for abuse of discretion.  (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)  Where there is a rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.  (*Ibid.*)

In *Lockwood*, the trial court concluded that the defendant had rebutted the presumption that the entire amount of assistance provided was a direct result of defendant's criminal conduct, an incident of domestic violence, because the victim's declaration established consistent acts of domestic violence committed by the victim's husband (not the defendant) that could have contributed to the amount of assistance provided to the victim.  (*Lockwood*, *supra*, 214 Cal.App.4th at pp. 95, 98.)  The appellate court agreed, as the declaration "suggest[ed] the medical treatment underlying the Board's payment had resulted from marital strife and injury inflicted by the victim's husband rather than from defendant's criminal conduct."  (*Id.* at pp. 101-102.)

Here, George concedes she did not provide the trial court with new witnesses or other evidence at the restitution hearing, but asserts section 1202.4 does not require any specific form of evidence to rebut the presumption and her reference to the trial testimony should have been sufficient.  On the record before us, we conclude the court abused its discretion in not reviewing the Board's records in camera and remand the matter for a new restitution hearing.

The Board sought reimbursement of $1,000 for medical expenses and mental health services as follows: $1,125 for Rodrigo Cabrera, $4,050 for Quinones and $2,430 for Victor. The prosecutor presented no bill for the $1,000 paid for medical expenses. Rather, the record contains two store receipts showing the purchase of two "4 CHANNEL DVR[s]" (digital video recorders) for a combined purchase price of about $1,099. The Board's records show that about $1,099 was billed for medical expenses and $1000 paid. Thus, the Board denoted the two DVRs as medical expenses. A "medical expense" is generally defined as "[a]n expense for medical treatment or healthcare, such as drug costs and health-insurance premiums." (Black's Law Dict. (10th ed. 2009) p. 659, col. 2.) On its face, a DVR does not qualify as a medical expense. The trial court abused its discretion in ordering George to reimburse for the DVRs as there is no rational basis for concluding these devices constituted medical expenses.

The incident occurred in March 2012. The redacted bills show Quinones received unknown care for an unknown injury or illness from November 2012 to September 2013. Quinones testified the incident caused her to fear for her life and the life of her family. At the time of the incident, however, Quinones told the 911 dispatcher, "I'm not afraid of her. But I am not going to go and sit and deal with a 50-year-old." A friend of Quinones testified the incident appeared to have had no impact on Quinones and she always acted like the incident "was nothing to her."

This evidence comports with the fact Quinones did not seek counseling until November 2012, almost eight months after the incident. Additionally, a probation

officer reported in July 2013 that Quinones never responded to the restitution claim letter and that he could not reach her by telephone. Moreover, the jury likely found George guilty of the lesser offense of "attempted" criminal threats based on this evidence and the lack of evidence showing George's acts placed Quinones in sustained fear for her safety or the safety of her immediate family. (*People v. Toledo*, *supra*, 26 Cal.4th at p. 231 [defendant can be convicted of the lesser offense of attempted criminal threats if threat does not cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear].) The totality of the evidence tends to suggest the mental health services Quinones received did not stem from the incident with George.

The evidence suggests the same result as to Cabrera and Victor. Cabrera testified that "[w]e were frightened at the moment" of the incident. Starting about nine months after the incident, Cabrera received unknown care for an unknown injury or illness from December 2012 to January 2013, with an additional expense in June 2013. Victor also received unknown care for an unknown injury or illness from December 2012 to June 2013. Victor did not testify at trial. Rather, his sister Jazmin testified that she and Victor were in her room when she heard yelling. After instructing Victor to stay in her room, Jazmin went out and saw Quinones arguing with George. A deputy who was trained to identify and take statements from all witnesses, only interviewed Quinones, Cabrera and Jazmin.

Cabrera and Victor lived with Quinones at the time of the incident and may qualify as victims of the crime entitled to restitution if they sustained economic loss as

10

the result of the crime. (§ 1202.4, subd. (k).) Alternatively, they may qualify as derivative victims. (Gov. Code, §§ 13951, subd. (c), 13955.) Here, however, the trial testimony together with the timing of the mental health services received by Cabrera and Victor suggest the mental health services they received did not stem from the incident with George.

Because the evidence tended to rebut the statutory presumption that the Board's payments resulted from George's criminal conduct, the trial court should have reviewed the Board's records in camera to determine whether the information was necessary for George to dispute the amount of the restitution order. (§ 1202.4, subd. (f)(4)(C).) Thus, we reverse the restitution award against George and remand for a new restitution hearing. (*People v. Harvest* (2000) 84 Cal.App.4th 641, 650 [victim restitution does not constitute punishment for double jeopardy purposes].) If the trial court finds the Board's records are necessary for George to dispute the restitution order, George is entitled to the sealed material in her effort to rebut the statutory presumption. (*Lockwood*, *supra*, 214 Cal.App.4th at p. 101.)

### III. *Conceded Issues*

A. Sentence Issue

Based on George's conviction of attempted criminal threats (§§ 422, 664) and true finding that she personally used a dangerous or deadly weapon (§ 12022, subd. (b)(1)), she faced a possible mid-term sentence of one year for the attempted criminal threat and a consecutive one-year sentence for the weapon enhancement.

11

At the sentencing hearing, the court stated, "[A]s to Count 1, attempted terrorist threat, the Court will impose middle term of two years, which is consecutive to one year. Consecutive to that will be imposed an enhancement for the use of a deadly weapon, under Penal Code Section 12022, subsection B, paragraph 1. Total commitment, therefore, will be for two years." The parties assert, and we agree, it appears the court intended to impose a two-year aggregate sentence and misspoke when it stated it was imposing a two-year term for the attempted criminal threats as such a term was not a sentencing option; the only sentencing options for attempted criminal threats were eight months, one year, and eighteen months, which constitute half the available punishment for criminal threats. (§§ 18, subd. (a), 422, subd. (a), 664, subd. (b).)

The court's minutes and the abstract of judgment reflect that the court imposed a two-year term for the attempted criminal threat conviction and a concurrent one-year term for the weapon enhancement. The parties assert, and we agree, a concurrent term for the weapon enhancement was not a valid sentencing option. (§ 12022, subd. (b)(1) [providing for an "additional and consecutive term of imprisonment in the state prison"].)

The oral pronouncement of judgment controls where it conflicts with the abstract of judgment or minute order. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) Accordingly, we order the abstract of judgment and minute order amended to reflect the only lawful sentence the trial court could have intended: one year for the

12

attempted criminal threat conviction with a consecutive year for the weapon enhancement.

B. Fines

At the sentencing hearing, the court stated it would "impose the minimum restitution fine of $280, plus a 10 percent collection fee, a total of $308." The minutes reflect that the court imposed this fine under section 1202.4. The court also imposed a "parole revocation . . . fine in the same amount" as required under section 1202.45 and stayed this fine "until and unless the defendant violates parole."

George committed the offense on March 31, 2012, when the minimum restitution fine was $240. The trial court is required to apply the statutory scheme in existence in 2012 at the time of the crime. (*People v. Martinez* (2005) 36 Cal.4th 384, 389.) Although the trial court had the discretion to impose any restitution fine ranging from $240 up to $10,000 (see §1202.4, subd. (b)(1)), the record reflects the trial court intended to impose only the minimum restitution fine required under section 1202.4, subdivision (b). Accordingly, the judgment shall be modified to reflect a restitution fine of $240 instead of $280. Additionally, the stayed parole revocation fine must be modified as the law requires that fine equal the restitution fine. (§ 1202.45, subd. (a).)

## DISPOSITION

The judgment of conviction is affirmed. The judgment is modified to: (1) reflect a sentence of one year for the attempted criminal threat conviction with a consecutive year for the weapon enhancement and (2) impose a restitution fine and a parole revocation fine in the amount of $240. The restitution award is reversed and the

13

matter is remanded to the trial court for a new restitution hearing. The trial court is directed to amend its minutes and the abstract of judgment to reflect the modifications and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

McINTYRE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.