Filed 9/20/16  P. v. Cortez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEVEN CORTEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B267299<br>(Super. Ct. No. 2014039136)<br>(Ventura County) |

A jury convicted Steven Cortez of two counts of attempted murder (Pen. Code, §§ 187, subd. (a), 664),[1] one count of street terrorism (§ 186.22, subd. (a)), and two counts of assault with a firearm (§ 245, subd. (a)(2)), and found true gang and firearm allegations (§§ 186.22, subd. (b)(1), 12022.5, subd. (a), 12022.53, subd. (c)).  The trial court sentenced him to prison for an aggregate determinate term of 39 years; it also imposed victim restitution (§ 1202.4), in the sum of $4,000 payable to the Fillmore Fire Department.

Cortez contends that the trial court erred by admitting cumulative evidence of his juvenile robbery adjudication to prove that his gang engaged in a pattern of criminal activity and by imposing restitution to the Fillmore Fire

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

Department.  We strike the restitution award to the Fillmore Fire Department and otherwise affirm.

FACTS

Cortez, Ricardo Magaña, and Christian Castaneda were members of the 12th Street Locos, a violent Santa Paula Street gang.  One evening, Cortez and Magaña "were hanging out in [a] friend's backyard" around a bonfire.  Castaneda came over.  He said "he had a stolen car" and asked Magaña if he "wanted to go ride around with him."  Since Magaña "was [Cortez's] ride home" and the gang has a rule—"don't leave a homey on the hang"—Magaña "asked Cortez if he wanted to roll with [them]."  Cortez said, "Yeah."

They drove to Steckel Park where Magaña tagged a utility box with their gang monikers and "X3LS"—an abbreviation for 12th Street Locos.  Next they drove to Cortez's house, where Cortez changed into jeans and a hooded sweater and picked up his .38 revolver.  Cortez once told Magaña that he liked that type of gun because "it doesn't leave shell casings," which "makes it more difficult for a crime to be solved."

Cortez said, "Let's go to Fillmore."  He said that members of Little Boys, a rival gang, "hang out" in front of a liquor store there.  Cortez thought that the three of them "might catch [the Little Boys] slipping," meaning that they "could find [the Little Boys] off guard, maybe get in a fight with them," or shoot and kill one of them.

They drove to Fillmore and stopped near the Green Valley Market.  Magaña tagged the market with graffiti indicating "Santa Paula 12th Street Locos 13," which was a form of disrespect to the Little Boys by letting them know the 12th Street Locos were present there.  Afterwards, Cortez, Magaña, and Castaneda drove around Fillmore looking for Little Boys.

After a few minutes they headed back to the market to see if anyone was there or if their graffiti had been crossed out.  Victor Vargas (Victor) and his brother Guillermo Vargas (Guillermo) were walking past the market on their way to

2

a birthday party.[2]  Cortez said, "'Look at those fools,'" and got out of the car.  He asked Victor and Guillermo, "'Where are you from?'"  They kept walking.  Cortez repeated his question.  Victor stopped and looked at Cortez.  Guillermo told Victor to keep walking.  They turned away from Cortez and continued down the street.

Cortez pulled out his gun and shot at them five or six times.  Guillermo tried to protect Victor by pushing him away.  Victor was shot in the shoulder.  Guillermo stumbled and fell to the ground next to a parked car.  A bullet hit the tire in front of him.

Cortez got back in the car and said, "'Let's bounce.'"  Castaneda drove "[f]ast" back towards Santa Paula.  Cortez said, "Did you hear him yell?"  He sounded proud to have shot someone.  At a sharp turn Castaneda lost control of the car and crashed into a dirt hill.  Magaña and Castaneda tried to get the car unstuck.  Cortez, who had wandered off, reappeared without his sweater.  They were arrested while trying to move the car onto the street.

## DISCUSSION

### Admission of Juvenile Robbery Adjudication

Cortez contends that the trial court erred under Evidence Code section 352 (section 352) by admitting highly prejudicial and cumulative evidence of his juvenile adjudication for attempted robbery to prove the street terrorism count and gang enhancements.  "[S]ection 352 requires the exclusion of evidence only when its probative value is *substantially* outweighed by its prejudicial effect.  'Evidence is substantially more prejudicial than probative . . . [only] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].'  [Citation.]"  (*People v. Quang Minh Tran* (2011) 51 Cal.4th 1040, 1047 (*Tran*).)  We review the trial court's ruling for abuse of discretion.  (*People v. Carey* (2007) 41 Cal.4th 109, 128.)

---

[2] We refer to the Vargas brothers by their first names to avoid confusion.  No disrespect is intended.

The street terrorism count and the gang enhancements both required proof that 12th Street Locos members "engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).) A "pattern of criminal gang activity" is defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of [certain enumerated] offenses" (predicate offenses) during the period defined by statute. (§ 186.22, subd. (e); *People v. Gardeley* (1996) 14 Cal.4th 605, 610, disapproved on another point by *People v. Sanchez* (2016) 63 Cal.4th 665, 686-687.) "[A] predicate offense [may] be established by proof of an offense the defendant committed on a separate occasion . . . ." (*Tran*, *supra*, 51 Cal.4th at p. 1046.)

The trial court allowed the prosecution to present evidence of three predicate offenses: convictions of gang members Frank Anaya and Ivan Lemus and, over Cortez's objections, his sustained juvenile petition for attempted robbery. The gang expert testified about the facts of the attempted robbery adjudication: Cortez and another individual were in a vehicle. They pulled up to the victim, who was walking on the sidewalk wearing headphones. Cortez started a conversation with him and eventually asked, "'Do you have anything on you? I like those headphones . . . .'" The victim observed Cortez reach for his waistband and believed he had a firearm or weapon. He stepped back, fearing for his safety.

Cortez stepped out of the vehicle and stood in a "bladed[] stance." He asked the victim, "'What else do you have inside your pockets?'" The victim told him, "'I have a lighter,'" and gave it to him. Cortez then said, "'That's a nice cell phone. I want it.'" The victim stated, "'It's mine.'" The victim dialed 911, pretending to call his mother. Cortez asked him, "'Would you rather be hit up or beat,'" meaning would he prefer to cooperate or be assaulted. Cortez and his companion then fled the area without taking the headphones or the phone.

Cortez argues that the trial court erred by admitting his juvenile adjudication because it was "so cumulative, and its relevance limited to issues that

4

[were] not reasonably in dispute, that it [should have been] excluded." We disagree.

The juvenile adjudication was not unduly cumulative. The prosecution was required to show two predicate offenses; it presented evidence of three. The trial court "need not limit the prosecution's evidence to one or two separate offenses lest the jury find a failure of proof as to at least one of them . . . ." (*Tran*, *supra*, 51 Cal.4th at p. 1049.) Although "the probative value of the evidence inevitably decreases with each additional offense, while its prejudicial effect increases" (*ibid.*), this was not a case where "the prosecutor introduced evidence of at least eight" offenses (*People v. Williams* (2009) 170 Cal.App.4th 587, 609 (*Williams*)) or "the prosecutor had ample evidence apart from [the defendant's] juvenile offense to establish both [the existence of] a criminal gang and [his being] a gang member" (*People v. Leon* (2008) 161 Cal.App.4th 149, 169 (*Leon*)).[3] More recent cases have found evidence of six or even eight predicate offenses not unduly prejudicial. (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1436 [six]; *People v. Hill* (2011) 191 Cal.App.4th 1104, 1139 [eight].)

Cortez points out that the prosecution initially planned to use another gang member's conviction as the third predicate offense but, after the trial court ruled his own juvenile adjudication admissible, used that instead. In addition, he notes, the charged offenses in this case could have served as predicates. (See *People v. Loeun* (1997) 17 Cal.4th 1, 10.) He argues that his "juvenile adjudication was thus plainly cumulative to predicates already available to the prosecution." *Tran* squarely rejected this argument. The Supreme Court held that "the

---

[3] It is unclear what *Leon* meant by the prosecution having "ample [other] evidence." If the prosecution *presented* evidence of several other offenses committed by gang members, then *Leon*, like *Williams*, simply concluded that the defendant's prior offense was cumulative. If the Court of Appeal meant that there was ample evidence of other gang offenses *available* to the prosecution that should have been presented instead of the defendant's juvenile adjudication, then its holding is no longer good law in light of *Tran*, as discussed below.

5

prosecution['s] . . . ability to develop evidence of predicate offenses committed by other gang members does not require exclusion of evidence of a defendant's own separate offense to show a pattern of criminal gang activity." (*Tran*, *supra*, 51 Cal.4th at p. 1046.)

Nor was there excessive prejudice from the admission of Cortez's juvenile adjudication. Because the juvenile petition was sustained, "there was little danger of confusing the issues by requiring the jury to determine if [he] was guilty of both the charged offenses and the [attempted robbery], and no risk the jury might convict [him] to prevent him from escaping punishment for the [attempted robbery]." (*Tran*, *supra*, 51 Cal.4th at p. 1050.)

Moreover, "[t]he evidence of [his attempted robbery] was less inflammatory than the testimony about the charged offenses [citation] . . . ." (*Tran*, *supra*, 51 Cal.4th at p. 1050.) As Cortez acknowledges, it "was never firmly established" that he had a gun during the attempted robbery—the victim merely feared that he did. He did not physically injure the victim at all. Here, in contrast, he shot at two victims without provocation and nearly killed them. The trial court did not abuse its discretion in admitting evidence of Cortez's juvenile adjudication for attempted robbery.

### *Restitution*

Cortez contends that the trial court erred by imposing $4,000 in restitution to the Fillmore Fire Department, which was not a direct victim but merely responded to the scene of the shooting. The People concede that restitution to the fire department was unauthorized by section 1202.4, subdivision (f). We agree. (See *People v. Martinez* (2005) 36 Cal.4th 384, 394 [disapproving of case "hold[ing] that a fire department that has incurred labor costs in fighting a fire on a vacant lot not owned by the department is a direct victim of the crime of unlawfully causing a fire"].) Accordingly, we will strike that portion of the trial court's restitution award.

6

DISPOSITION

The restitution order is modified to strike $4,000 in restitution to the Fillmore Fire Department.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


TANGEMAN, J.

7

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.