[No. S118180. July 14, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR MANUEL MARTINEZ, Defendant and Appellant.

## COUNSEL

Shama H. Mesiwala and Linnéa M. Johnson, under appointments by the Supreme Court, and William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Patrick Whelan, Janet E. Neeley, Stan Cross and Lee E. Seale, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—A jury convicted defendant of attempting to manufacture methamphetamine. Treating the state agency that disposed of the hazardous substances found at the illegal drug laboratory as a crime victim, the trial court ordered defendant to reimburse the agency for its cleanup costs of $5,402.67. The court did so under Penal Code section 1202.4, subdivision (f), which requires restitution to a crime victim when, "as a result of the defendant's conduct," the victim "has suffered economic loss." We conclude that this statute was an improper basis for the restitution order because the agency was not a direct victim of defendant's criminal conduct. The exclusive statutory basis for reimbursement to the agency is provided by Health and Safety Code sections 11470.1 and 11470.2, which establish special procedures by which public entities such as the Department of Toxic Substance Control, the agency involved here, may recover their costs of cleaning up hazardous substances, or their precursors, at illegal drug manufacturing sites. Because these special procedures were not followed here, the reimbursement order is invalid.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Around 9:30 a.m. on January 7, 2001, Joe Demello of the Fresno County Sheriff's Department stopped defendant as he was driving a Honda hatchback away from a Merced County residence that was under surveillance as a

suspected site of an illegal methamphetamine laboratory. After stopping defendant, Demello walked around the hatchback and saw through its large rear window that it contained various objects—including a metal cylinder, bags of ice, and a stained cardboard box—that the officer, based on his experience, believed were associated with methamphetamine manufacture. A later search of the premises revealed a "super lab" capable of manufacturing large quantities of methamphetamine.

Defendant was charged with manufacturing methamphetamine, a controlled substance. (Health & Saf. Code, § 11379.6, subd. (a).) A jury acquitted him of the charged offense, but it convicted him of the lesser included offense of attempt (Pen. Code, § 664) to manufacture a controlled substance (Health & Saf. Code, § 11379.6, subd. (a)). The trial court imposed a prison term of two years and six months and ordered restitution of $5,402.67 to the Department of Toxic Substances Control (Department) under Penal Code section 1202.4, subdivision (f).

Defendant appealed. He challenged the validity of the trial court's restitution order made under Penal Code section 1202.4, arguing that the Department was not a direct victim within the meaning of that statute, and therefore it was not entitled to reimbursement of costs incurred in removing the hazardous waste from the illegal drug laboratory. In response, the Attorney General maintained the order was proper because it reimbursed the government for cleanup costs resulting from defendant's crime, rather than for expenses incurred in investigating or prosecuting him.

The Court of Appeal upheld the order. It noted that the Legislature has expressly directed the Department, once it is notified by a law enforcement agency of the presence of hazardous substances in an illegal drug laboratory, to remove "waste material from the unlawful manufacture of a controlled substance." (Health & Saf. Code, § 25354.5, subd. (b)(1).) The court concluded that the $5,402.67 the Department spent in cleanup costs resulted directly from defendant's criminal conduct, thus making the Department a direct victim and therefore entitled to receive restitution under the direct victim provision of Penal Code section 1202.4.

Defendant petitioned for a rehearing in the Court of Appeal, contending that the court's analysis had overlooked Health and Safety Code sections 11470.1 and 11470.2, which expressly allow the prosecutor, either by means of a civil action or a criminal proceeding, to seek recovery of the costs of destroying controlled substances or their precursors. Defendant asserted that because the Department was not a direct victim of his attempt to manufacture

methamphetamine, these Health and Safety Code provisions are the exclusive means through which the Department could recoup its cleanup costs. The Court of Appeal denied defendant's rehearing petition.

In considering the Department to be a direct victim, thus entitling it to restitution under Penal Code section 1202.4, the Court of Appeal created a conflict with two previous Court of Appeal decisions, *People v. Narron* (1987) 192 Cal.App.3d 724 [237 Cal.Rptr. 693] (*Narron*), and *People v. Brach* (2002) 95 Cal.App.4th 571 [115 Cal.Rptr.2d 753] (*Brach*). Those two cases concluded that Health and Safety Code sections 11470.1 and 11470.2 provide the exclusive remedies for the recovery of costs incurred in disposing of controlled substances. We granted review to resolve the conflict.

## II. RELEVANT STATUTES

We begin with a review of the statutes at issue here. On June 8, 1982, the voters of California adopted Proposition 8, an initiative amending our Constitution (Cal. Const., art. I, § 28, subd. (b)) to grant "victims of crime a constitutional right" to receive restitution from defendants convicted of crimes that caused the victims economic loss. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1122 [43 Cal.Rptr.2d 681, 899 P.2d 67]; *People v. Broussard* (1993) 5 Cal.4th 1067, 1069 [22 Cal.Rptr.2d 278, 856 P.2d 1134].) In response, the Legislature enacted an array of statutes covering restitution or recovery of expenses by crime victims. Among those statutes are Health and Safety Code sections 11470.1 and 11470.2, as well as Penal Code section 1202.4.

In March 1983, at the urging of the Attorney General, state Senator Barry Keene introduced Senate Bill No. 1121 (1983–1984 Reg. Sess.) to add sections 11470.1 and 11470.2 to the Health and Safety Code. The purpose of the bill was "to require those who engage in illegal drug activities" to repay the costs incurred in seizing and destroying unlawful substances akin to "the charges imposed under existing law for abating other nuisances." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1121 (1983–1984 Reg. Sess.) as amended May 16, 1983, p. 2.) The bill sought to alleviate the financial burden on law enforcement agencies—especially those in small rural areas—of eradicating marijuana plants and closing clandestine drug labs. (Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 1211 (1983–1984 Reg. Sess.) as amended Aug. 25, 1983, p. 2.) By permitting law enforcement to recover its cleanup costs, the legislation sought to ensure that "those who engage in illegal drug activities" would "bear the costs of

eliminating their abuses." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1121 (1983–1984 Reg. Sess.) as amended May 16, 1983, p. 2.) The new legislation took effect on January 1, 1984.

Health and Safety Code section 11470.1 allows a civil action against "[a]ny person who manufactures or cultivates a controlled substance or its precursors." (Health & Saf. Code, § 11470.1, subd. (a)(1).) The action "may be brought by the district attorney, county counsel, city attorney, the State Department of Health Services, or Attorney General." (*Id.*, § 11470.1, subd. (d).)

Instead of bringing a civil action under Health and Safety Code section 11470.1, the prosecution can, under section 11470.2, seek recovery of costs incurred by the governmental entity in removal or destruction of the controlled substances or their precursors by filing a petition for cost recovery in the criminal proceeding "in which the defendant has been charged with the underlying offense." (Health & Saf. Code, § 11470.2, subd. (b).)

Here, the trial court ordered defendant to reimburse the Department for $5,402.67 it had spent in disposing of the toxic substances found at the illegal drug lab site where defendant was working. The court looked to Penal Code section 1202.4's restitution provisions as authority for the award. That Penal Code section, like Health and Safety Code sections 11470.1 and 11470.2, was enacted by the Legislature in 1983 (Stats. 1983, ch. 1092, § 320.1, p. 4058) in response to the voters' passage of Proposition 8 described earlier. (*Review of 1983 Selected Calif. Legislation* (1984) 15 Pacific L.J. 559, 561.) As originally enacted in 1983, Penal Code section 1202.4 provided for restitution to crime victims; it made no mention of restitution to entities, governmental or otherwise, as crime victims. Not until 1994 did the Legislature amend Penal Code section 1202.4 to expressly permit restitution to a "government, governmental subdivision, agency, or instrumentality" when it "is a direct victim of a crime." (Pen. Code, § 1202.4, former subd. (p), added by Stats. 1994, ch. 1106, § 3, p. 6550, since amended by Stats. 1996, ch. 629, § 3 [moving provision into subd. (k)] & Stats. 1999, ch. 584, § 4, [dividing subd. (k) into pars. (1) and (2) and adding par. (3)].)

We apply the statutory scheme in existence in 2001 when defendant committed his crime. In 2001, Penal Code section 1202.4, subdivision (k) provided that for the purposes of the section the term " 'victim' " includes "all of the following: [¶] (1) The immediate surviving family of the actual victim. [¶] (2) Any corporation, business trust, estate, trust, partnership,

association, joint venture, *government, governmental subdivision, agency or instrumentality*, or any other legal or commercial entity *when that entity is a direct victim of a crime.* [¶¶] (3) 'Derivative victims' as defined in Section 13960 of the Government Code." (Stats. 1999, ch. 584, § 4, italics added.) All the derivative victims enumerated in the referenced section are natural persons. (Gov. Code, former § 13960, subd. (a)(2), Stats. 1998, ch. 895, § 1.4, repealed by Stats. 2002, ch. 1141, § 10.)

## III. RELEVANT CASES

Two Court of Appeal decisions deserve discussion because, as in this case, they involved the applicability of Health and Safety Code sections 11470.1 and 11470.2 when a governmental entity seeks recovery of its costs of hazardous substance cleanup. Neither opinion was cited by the Court of Appeal here.

In *Narron, supra,* 192 Cal.App.3d 724, the defendant pleaded guilty to cultivating marijuana and was ordered by the trial court, as a condition of probation (Pen. Code, former § 1203.1), to pay the county's costs of cleaning up hazardous chemicals found during a search of his mobilehome. (*Narron, supra,* at p. 729.) On appeal, the defendant challenged the restitution condition, arguing that the county's exclusive remedy for recouping its cleanup costs was to comply with either section 11470.1 or section 11470.2 of the Health and Safety Code.

The Court of Appeal in *Narron* concluded that if the Legislature had intended to permit government recoupment of cleanup costs by way of a restitution probation condition, it would have had no reason to enact the two Health and Safety Code sections. (*Narron, supra,* 192 Cal.App.3d at p. 739.) The court explained: "Prior to the legislation, such costs were recoverable only upon a criminal conviction, and then only as a part of a restitution condition where probation was granted." (*Id.* at p. 740.) It noted that Health and Safety Code sections 11470.1 and 11470.2 represent a balancing of two competing concerns reflected in the legislative history of the two statutes—that law enforcement not go unreimbursed for controlled substance eradication or cleanup costs and that defendants receive certain procedural protections before reimbursement can be imposed. (*Narron, supra,* at p. 739.) For example, a criminal defendant who contests a petition for recovery filed in the prosecution for a drug offense is entitled to a jury trial before recovery can be granted (Health & Saf. Code, § 11470.2, subd. (d)); and if the People bring a civil action against a person who aids, abets, or profits from controlled substance manufacture, that defendant is entitled to

have liability proven by clear and convincing evidence (§ 11470.1, subd. (e)(1)). Given the contrast between these strict procedural requirements—filing a formal petition, requiring a jury trial on the petition's allegations, imposing an elevated standard of proof for aiders and abettors—and "the informal procedures" used in awarding restitution under the Penal Code, the *Narron* court concluded that if the stringent procedures of the Health and Safety Code were discretionary, governmental agencies would not use them. (*Narron, supra,* at pp. 738–739.) Accordingly, the Court of Appeal concluded that Health and Safety Code sections 11470.1 and 11470.2 provided "the exclusive remedy for reimbursement of the expenses" that were recoverable by the county. (*Narron, supra,* at p. 729.)

In *Brach, supra,* 95 Cal.App.4th 571, the defendants pleaded guilty to cultivating and possessing marijuana for sale, and they were granted probation. One condition of their probation required them to reimburse the county sheriff's department for its costs in destroying the marijuana crop. On appeal, the defendants challenged the restitution order, arguing it was infirm because the sheriff's department had not complied with Health and Safety Code sections 11470.1 or 11470.2. (*Brach, supra,* at p. 576.) The Court of Appeal acknowledged that the two Health and Safety Code sections "provide 'the exclusive remedy for reimbursement of the expenses recoverable under these statutes.' " (*Ibid.,* quoting *Narron, supra,* 192 Cal.App.3d at p. 729.) It upheld the order, because, despite having notice that the sheriff's department was requesting restitution under Health and Safety Code section 11470.2, defendants had entered into the plea agreement without objecting to the probation condition requiring restitution. (*Brach, supra,* at p. 577.)

## IV. THIS CASE

As mentioned earlier, after a jury convicted defendant of attempted manufacture of a controlled substance, the trial court sentenced him to two years and six months in prison and ordered him to reimburse the Department $5,402.67 for its cost of cleaning up the illegal drug laboratory. The trial court based its restitution order on Penal Code section 1202.4, subdivision (f), which requires restitution "[i]n every case in which a victim has suffered economic loss as a result of the defendant's conduct."

In affirming the trial court, the Court of Appeal reasoned that defendant's attempt to manufacture methamphetamine "resulted in damage to the environment," necessitating the Department's expenditure of $5,402.67 to clean up

toxic substances at the illegal laboratory. This expenditure, the Court of Appeal said, "resulted directly from defendant's actions," and thus was "an appropriate matter for restitution."

In rejecting defendant's contention that the Department was not a direct victim of the crime, the Court of Appeal pointed to Health and Safety Code section 25354.5. Subdivision (a) of section 25354.5 requires law enforcement personnel to notify the Department when, in the course of their official duties, they become aware of a suspected "hazardous substance at a site where an illegal controlled substance is or was manufactured." Upon this notification, subdivision (b) of section 25354.5 requires the Department to minimize the danger at the illegal laboratory site posed by the hazardous substance or its precursor.

The Court of Appeal concluded: "In light of the language of [Penal Code] section 1202.4 and the mandate in Health and Safety Code section 25354.5, we find the Department of Toxic Substances Control was a direct victim of defendant's criminal activity."

In briefing to this court, the People argue for the first time that, because defendant did not object at trial to the restitution order as impermissible under Penal Code section 1202.4, he may not now raise this claim. Irrespective of whether defendant has preserved the claim, however, it is within our discretion to decide this recurring issue for the guidance of government entities seeking cleanup costs and of trial courts ordering restitution. (See *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

We disagree with the Court of Appeal's conclusion that subdivision (f) of Penal Code section 1202.4 was a proper basis for the trial court's restitution award to the Department for its cleanup costs. Subdivision (f) of section 1202.4 requires that, "[i]n every case in which a victim has suffered economic loss" resulting from a defendant's conduct, the trial court must order full restitution "based on the amount of loss claimed by the victim . . . or any other showing to the court." The definition of the term "victim" in subdivision (k) of section 1202.4 encompasses not only a victim who is a natural person but also a victim that is a "corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity *when that entity is a direct victim of a crime*." (*Id.*, § 1202.4, subd. (k)(2), italics added.)

■ Thus, Penal Code section 1202.4, subdivision (k) permits restitution to a business or governmental entity only when it is a *direct victim* of crime. Before 1994, when the Legislature first inserted the direct victim language into section 1202.4, case law had recognized that restitution to the government was proper when it was a victim of a crime, but also that restitution was not proper when a governmental loss resulted from prosecuting a crime. (See *People v. Burnett* (1978) 86 Cal.App.3d 320, 322 [150 Cal.Rptr. 126]; *People v. Baker* (1974) 39 Cal.App.3d 550, 559 [113 Cal.Rptr. 248].) Relying on these cases, the Court of Appeal in *Narron,* decided in 1987, observed that a government entity is a *direct victim* of a crime when, for example, it is a victim of tax evasion or theft of its property. (*Narron, supra,* 192 Cal.App.3d at p. 732.) In *People v. Crow* (1993) 6 Cal.4th 952 [26 Cal.Rptr.2d 1, 864 P.2d 80], we relied on this passage from *Narron* in the course of sustaining a restitution order to the county based on fraudulently obtaining welfare payments. (*Id.,* at pp. 957–958.) Thus, when in 1994 the Legislature added the direct victim language to Penal Code section 1202.4, that term already carried a precise meaning.[1]

■ We reiterated that meaning in *People v. Birkett* (1999) 21 Cal.4th 226 [87 Cal.Rptr.2d 205, 980 P.2d 912], in which we described a provision in Penal Code former section 1203.04 permitting restitution to entities that are "direct" victims of crime as limiting restitution to "entities *against which* the probationer's crimes had been committed"—that is, entities that are the "immediate objects of the probationer's offenses." (*Birkett, supra,* at pp. 232–233.)

■ Here, in contrast, defendant's attempt to manufacture methamphetamine was not an offense committed against the Department, nor was the Department the immediate object of his crime. Therefore, the Department

---

[1] Cases decided after the Legislature's 1994 addition of the direct victim language to Penal Code section 1202.4 have preserved the distinction. For example, in *People v. Torres* (1997) 59 Cal.App.4th 1 [68 Cal.Rptr.2d 644], the Court of Appeal invalidated a restitution order to a sheriff's department for money its undercover officers used to buy illegal drugs during an investigation, but which it never recovered from the sellers. "Under the relevant case law and the statutory scheme, public agencies are not directly 'victimized' for purposes of restitution under Penal Code section 1202.4 merely because they spend money to investigate crimes or apprehend criminals." (*People v. Ozkan* (2004) 124 Cal.App.4th 1072, 1077 [21 Cal.Rptr.3d 854].)

Recently *In re Johnny M.* (2002) 100 Cal.App.4th 1128 [123 Cal.Rptr.2d 316], upheld a juvenile court restitution order to a school district that had twice been burglarized by a minor. The order was made under Welfare and Institutions Code section 730.6, subdivision (k), which permits restitution to an entity when it is "a direct victim" of a juvenile offense. Johnny M.'s break-ins at the school caused physical damage and required cleanup and repairs, made in part by salaried district employees, so that classes and normal school operations could resume. (*In re Johnny M, supra,* 100 Cal.App.4th at pp. 1130–1131.) The school district was thus a direct victim of the burglaries of its school building.

was not a direct victim entitled to recover its cleanup costs under Penal Code section 1202.4. But the unavailability of restitution under Penal Code section 1202.4 does not mean that the Department cannot recoup its costs in disposing of hazardous substances at an illegal drug laboratory. As noted earlier, the Legislature has expressly provided for reimbursement of such costs through Health and Safety Code sections 11470.1 and 11470.2. Reimbursement can be obtained either by bringing a civil action (Health & Saf. Code, § 11470.1) or, in the criminal proceeding pending against the defendant, by filing a recovery petition (§ 11470.2). We agree with the Court of Appeal in *Narron, supra,* 192 Cal.App.3d at page 729, that these provisions are the "exclusive" means by which a government entity that is not a direct victim of a crime may recoup its costs of eradicating or cleaning up toxic or hazardous substances resulting from controlled substance crimes.

■ The Attorney General argues that restitution to the Department under Penal Code section 1202.4, subdivision (f) is proper, indeed compelled, because that broader provision reflects our state's constitutional mandate that "all persons who suffer losses as a result of criminal activity" have a right to receive restitution from convicted criminals whose crimes result in that loss. (Cal. Const., art. I, § 28, subd. (b); *People v. Birkett, supra,* 21 Cal.4th at p. 228.) Our answer is that the Legislature has carried out that constitutional mandate by enacting a comprehensive scheme that allows the government to recoup its crime-related losses. When the government is a direct victim of crime, it is entitled to restitution under section 1202.4, subdivision (k).[2] When, as in this case, the governmental agency must dispose of hazardous substances or their precursors at an illegal drug manufacturing site, it can recoup its costs by bringing a civil action under Health and Safety Code section 11470.1 or it can seek recovery of its costs in the criminal proceeding pending against the defendant, as set forth in Health and Safety Code section 11470.2.

Thus in this case, the Department may, subject to any claim of untimeliness, bring a civil action against defendant to recover its cleanup costs, as permitted under Health and Safety Code section 11470.1.

---

[2] We disapprove *In re Brian N.* (2004) 120 Cal.App.4th 591 [15 Cal.Rptr.3d 337] to the extent it holds that a fire department that has incurred labor costs in fighting a fire on a vacant lot not owned by the department is a direct victim of the crime of unlawfully causing a fire (Pen. Code, § 452, subd. (c)) within the meaning of Welfare and Institutions Code, section 730.6. "[S]ection 730.6[, which is applicable to juvenile offenders,] parallels Penal Code section 1202.4, which governs adult restitution." (*In re Johnny M., supra,* 100 Cal.App.4th at p. 1132.)

## DISPOSITION

The judgment of the Court of Appeal is reversed, and that court is directed to remand the case to the trial court, directing it to strike the portion of its order that defendant pay $5,402.67 in restitution to the Department of Toxic Substance Control.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.