Filed 5/10/16  P. v. Yeoman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE, | C080146 |
| Plaintiff and Respondent, | (Super. Ct. No. F14000376) |
| v. | |
| JENNIFER ASHLEY YEOMAN, | |
| Defendant and Appellant. | |

While employed at Retailer's Credit Association (RCA), defendant Jennifer Ashley Yeoman had access to credit card information for 165 of RCA's clients, and improperly used at least five individuals' information to purchase goods.  Defendant's crimes caused a security breach at RCA and were a substantial factor in RCA losing its biggest client, Sierra Nevada Memorial Hospital (SNMH).

Defendant pleaded no contest in three separate cases to insurance fraud, identity theft, petty theft, and obtaining money by false pretenses.  As part of her sentence, she

was ordered to pay $102,888.40 in victim restitution to RCA. Defendant contends RCA was not a direct victim of her crimes and therefore was not an eligible victim for restitution, and the People agree. We vacate the restitution order in favor of RCA and otherwise affirm the judgment.

FACTS AND PROCEEDINGS

RCA, a consumer collections agency, hired defendant on July 2, 2014 as a consumer collector. RCA gave defendant access to credit card information for RCA's clients on July 9, 2014. After learning defendant was facing criminal charges for identity theft and unauthorized use of another person's credit card, RCA terminated defendant's employment on July 11, 2014.

Approximately four days later, RCA learned one of its clients, Kelli C., had fraudulent charges on her credit card. Further investigation revealed defendant had fraudulently used the account information of at least five of RCA's clients, including Kelli C. All five of those individuals were SNMH accounts. RCA also identified 160 additional clients whose personal information was potentially compromised during defendant's employment and sent each a letter notice about the potential breach.

Sheila Baker, RCA's owner, contacted the police, who searched defendant's home and found multiple items sent to defendant's address that were in the names of two RCA clients. These two individuals, along with a third RCA debtor client, confirmed to police they all had fraudulent activity on the credit cards they had on file with RCA. Police arrested defendant.

Three or four weeks after discovering defendant's misconduct, RCA notified its largest client, SNMH, of the security breach and sent the hospital copies of the 160 letters RCA sent to potential victims. SNMH had been an RCA client for over 30 years and represented 75 percent of RCA's client base and revenue. In September 2014, SNMH terminated its contract with RCA, citing RCA's "failure . . . to timely notify" the hospital

2

of the security breach. According to Baker, the loss of SNMH as a client cost RCA about $135,000 in annual profits.

In October 2014, defendant pleaded no contest in case No. F14-000376 to one count of felony identity theft (count one; Pen. Code, § 530.5, subd. (a); unless otherwise set forth, statutory references that follow are to the Penal Code) and three counts of misdemeanor petty theft (counts four, six, and eight; § 484g, subd. (a)).

In case No. F14-000373, defendant pleaded no contest to one count of insurance fraud (§ 550, subd. (b)(1)) and one count of grand theft/fraudulently obtaining money (§§ 487, 532, subd. (a)). All remaining counts were dismissed with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754. Pursuant to the parties' agreement, the court imposed a split term of 60 months. Finally, as to case No. F14-000373 the parties agreed defendant would pay restitution to the victims of the crimes alleged therein in the amount of $19,891.20.

In case No. F13-000515, defendant pleaded no contest to one count of misdemeanor identity theft. (§ 530.5, subd. (a).) At the People's request, restitution to the victim in that case, Robert Yeoman was not ordered by the court after he did not appear for the restitution hearing in case No. F13-000515.

Thus, we are not concerned with the restitution orders in either case No. F13-000515 or case No. F14-000373 on this appeal. We are concerned only with the restitution order in case No. F14-000376 wherein defendant pleaded no contest to one count of identity theft naming as the victim of that crime Kelli C. and three counts of misdemeanor petty theft naming as the victims of those crimes Kelsey B. (the victim of two of the thefts) and Caitlin M.

The only issue before us on this appeal is the legality of the restitution order in favor of defendant's employer, RCA.

Regarding restitution to RCA in case No. F14-000376, the court held a hearing in July 2015. Baker, who testified at the hearing and submitted an affidavit, estimated the

3

company lost $136,638.40 due to defendant's theft. This included: (1) $290.90 in staff time expense, postage, letterhead, and envelopes to investigate the breach, deal with the five individuals whose information was improperly used by defendant, and send out the 160 letters to potentially affected clients; (2) $997.50 for a new hire search; (3) attorney consultations of $350; and (4) $135,000 in annual loss of company profits after SNMH canceled its contract with RCA. RCA also provided a summary of assignments from SNMH and a copy of the contract termination letter.

The primary issue of contention was RCA's lost-profits claim and whether the loss of the contract with SNMH was caused by defendant's criminal conduct or by RCA's failure to disclose promptly the breach of security to SNMH. Applying the principles of proximate causation, the trial court found defendant's conduct was "a substantial factor" in causing RCA's injuries. " '[B]ut for' defendant's actions the contract with SNMH would not have been terminated." Although RCA may have failed to notify timely SNMH of the security breach, the trial court reasoned defendant's intentional conduct prevented apportionment under principals of comparative negligence. The court ordered restitution of $102,888.40 to RCA, including $101,250 in lost profits and $1,638.40 in employee, attorney, hiring agency, postage, letterhead, and envelope expenses. Defendant appeals.

DISCUSSION

Defendant contends the restitution order is unauthorized because RCA was not a direct victim of her crimes. The People agree and so do we.

In California, "all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) This constitutional right is implemented by section 1202.4, subdivision (a)(1), which provides "a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime."

4

Although restitution statutes should be "interpreted broadly and liberally," and the term " 'victim' has a broad and flexible meaning," section 1202.4, subdivision (k)(2) entitles a business like RCA to obtain restitution only if it is a "direct victim" of a crime. (*People v. Saint-Amans* (2005) 131 Cal.App.4th 1076, 1084.) A direct victim is an entity that is the "immediate object[] of the . . . offenses," or the " ' "entit[y] against which the . . . crimes had been committed." ' " (*People v. Anderson* (2010) 50 Cal.4th 19, 28.) The connection must be proximate and immediate, rather than through any intervening actor or entity. (*People v. Slattery* (2008) 167 Cal.App.4th 1091, 1095-1096 (*Slattery*).)

For example, an insurer is not a direct victim where it acts as a third party incurring costs not because the defendant took any action against it but because it had a contractual obligation to reimburse the party against whom the defendant actually took action. (See, e.g., *People v. Birkett* (1999) 21 Cal.4th 226, 246; but see *People v. O'Casey* (2001) 88 Cal.App.4th 967, 971 [insurer who honored an employee's false workers' compensation claims was a direct victim].) Similarly, a government agency cannot recover costs that are a part of its ordinary governmental functions, such as toxic waste remediation due to the defendant's attempt to manufacture methamphetamine. (*People v. Martinez* (2005) 36 Cal.4th 384, 393-394). Also, a hospital is not a direct victim merely because it treated a crime victim, even if the victim failed to pay her bills. (*Slattery, supra*, 167 Cal.App.4th 1091; but see *People v. Saint-Amans, supra*, 131 Cal.App.4th at pp. 1086-1087 [bank was a direct victim where the defendant opened a fraudulent account and used it to siphon funds from a legitimate customer's account].)

Here, defendant pleaded no contest to identity theft and petty theft, crimes whose immediate object was to steal from the credit card holder. Although RCA may have suffered economic losses, similar to the hospital in *Slattery*, RCA was not an immediate object of defendant's crimes. Accordingly, RCA is not entitled to victim restitution under section 1202.4, subdivision (k)(2).

5

DISPOSITION

The $102,888.40 victim restitution award to RCA is vacated. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.


                                              HULL , J.


We concur:


BLEASE , Acting P. J.


MURRAY , J.

6