Filed 12/23/20  P. v. Bright CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ARTHUR JOHN BRIGHT, JR.,<br><br>　　Defendant and Appellant. | H047458<br>(Monterey County<br>Super. Ct. No. 18CR008802) |

## I.  INTRODUCTION

Defendant Arthur John Bright, Jr., pleaded no contest to cannabis cultivation resulting in a Water Code violation (Health & Saf. Code, § 11358, subd. (d)(3)(B)).[1]  The trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions.  After a further restitution hearing, the court ordered defendant to pay $3,092.40 for eradication of the cannabis by investigators from the district attorney's office.

On appeal, defendant contends that the trial court abused its discretion in ordering that he pay district attorney investigator costs.  For reasons that we will explain, we determine that defendant's claim is not reviewable on appeal because his claim falls within

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

the scope of an appellate waiver in his written plea agreement.  We will therefore dismiss the appeal.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Facts[2] and Charges*

A search warrant was executed at a rural property where defendant lived in an unincorporated area of Monterey County.  Among those present during execution of the search warrant were personnel from the Department of Fish and Wildlife, the Central Coast Regional Water Quality Control Board, and the district attorney's office.

The property was heavily wooded with steep terrain.  There were approximately five residences and multiple other structures on the property.  Vegetation had been cleared for cannabis cultivation.  Three cultivation areas were determined to be related to defendant.  One of those cultivation areas was in front of defendant's house and contained 52 cannabis plants.  The other two cultivation areas contained 443 cannabis plants.  After waiving his *Miranda*[3] rights, defendant stated that these two other cultivation areas were being used by another family.  He allowed them to cultivate in return for receiving one-third of the processed cannabis from the two areas.  Defendant occasionally inspected those two areas to make sure the plants were being properly cared for.

There was a confluence of two streams on the property.  One stream flowed into a larger river, which in turn flowed into another river and then out to the ocean.  The stream had been designated a critical habitat for steelhead fish, which was listed as a threatened species.  Steelhead had been seen in the stream at some point during the time that defendant lived on the property.

Stream water was being diverted with generators to supply water for the grows.  A fuel can was located by the generators.  Motor oil and chemicals were also located close to

---

[2] The facts underlying defendant's offense are taken from the preliminary hearing transcript, which provided the factual basis for his plea.

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

the stream. Defendant had not obtained a permit regarding discharge, or the potential of discharge, of waste into the water. He also did not have any permits from the county related to cannabis on the property.

A shed by defendant's residence contained items commonly used for butane hash oil (concentrated cannabis) extraction. Defendant acknowledged that he had manufactured concentrated cannabis. He stated that he smoked approximately five "joints" per day, and that he used about one-eighth of an ounce of concentrated cannabis per day. He reported that he gave extra cannabis to family or friends.

On May 29, 2019, defendant was charged by information with manufacturing concentrated cannabis (§ 11379.6, subd. (a); count 1), three counts of cannabis cultivation resulting in Water Code and Fish and Game Code violations (Health & Saf. Code, § 11358, subd. (d)(3)(B), (C) & (D); counts 2-4), and three misdemeanor violations of the Monterey County Code relating to cannabis activity (counts 5-7).

**B.** *Written Waiver of Rights and Plea Agreement*

On July 10, 2019, defendant executed a waiver of rights and plea agreement. Defendant agreed to plead to count 2, cannabis cultivation resulting in a Water Code violation (Health & Saf. Code, § 11358, subd. (d)(3)(B)), with the understanding that the remaining counts would be dismissed with a *Harvey*[4] waiver, that he would be placed on felony probation, and that he would be ordered to pay the "costs of eradication & removal of cannabis per H[ealth] & S[afety Code] § 11470.1." Regarding eradication and removal costs, a one-page attachment to the agreement specified that the terms of his probation would include "[c]osts for the eradication and removal of cannabis . . . awarded to each agency that participated if they request it. Currently estimated at $9196.00 includes DFW, Park Ranger and DAI's. Water[]Board has not provided cost estimate but believed to be nominal. (HS 11470.1 allows for civil recovery)."

---

[4] *People v. Harvey* (1979) 25 Cal.3d 754.

3

The agreement also included a waiver of appellate rights. Specifically, paragraph No. 14, which defendant initialed, stated, "(Appeal and Plea Withdrawal Waiver) I hereby waive and give up all rights regarding state and federal writs and appeals. This includes, but is not limited to, the right to appeal my conviction, the judgment, and any other orders previously issued by this court. I agree not to file any collateral attacks on my conviction or sentence at any time in the future. I further agree not to ask the Court to withdraw my plea for any reason after it is entered." (Boldface omitted.)

Defendant also initialed or signed provisions that stated the following: "I offer my plea of guilty or no contest freely and voluntarily and of my own accord. . . . [¶] I have read, or have had read to me, this form and have initialed each of the items that applies to my case. I have discussed each item with my attorney. By putting my initials next to the items in this form, I am indicating that I understand and agree with what is stated in each item that I have initialed. . . . I understand each of the rights outlined above and I give up each of them to enter my plea."

Defendant's trial counsel signed a provision in the agreement stating, "I have reviewed this form with my client and have explained each of the items in the form, including the defendant's constitutional rights, to the defendant and have answered all of his or her questions concerning the form and the plea agreement. . . . [¶] I concur in the defendant's decision to waive the above rights and enter this plea, and believe the defendant is doing so knowingly, intelligently, and voluntarily."

Defendant appeared in court the same day that he executed the waiver of rights and plea agreement. Defendant's trial counsel indicated to the court that defendant was "not objecting" to the probation terms listed in the attachment to the plea agreement.

The trial court proceeded to confirm that defendant had signed, initialed, and understood the agreement. The court specifically asked defendant, "Do you also waive your right to appeal, as you've indicated by your initials next to Paragraph 14?" Defendant responded affirmatively.

4

Defendant ultimately pleaded no contest to count 2, cannabis cultivation resulting in a Water Code violation (Health & Saf. Code, § 11358, subd. (d)(3)(B)).  The trial court accepted defendant's plea, finding that defendant understood the consequences of his plea, and that he knowingly, intelligently, and voluntarily waived his rights.

**C.** *Sentencing*

According to the probation officer's report, the prosecutor was seeking "approximately $9,196.00 for the eradication and removal of cannabis that is to be dispersed between the California Department of Fish and Wildlife, Monterey County Parks, Monterey County District Attorney Investigation Office and the Central Coast Regional Water Quality Control Board."  Consistent with defendant's plea agreement, the probation officer recommended probation condition No. 24, which would require defendant to "[p]ay victim restitution to the Department of Fish and Wildlife, the Monterey County Parks[,] Monterey Count[y] District Attorney Investigation Office and Central Coast Regional Water Quality Control Board in the amount of $9,196.00."  The probation officer also recommended that the court "retain[] jurisdiction over victim restitution."

The sentencing hearing was held on August 30, 2019.  The prosecutor offered to provide the trial court with a "breakdown" of the restitution for eradication and removal costs.  Defendant's trial counsel contended that restitution to the district attorney's office "might not be appropriate" and requested a hearing so he could "do some research with regard to DA investigators."  The prosecutor stated that he was "a little surprised" because "part of the plea negotiations was that [defendant] would be responsible for enforcement costs and that number was discussed."  The court stated, "Well, I do recall that discussion. It could simply result in an order anyway.  I'm not indicating anything one way or another." Defendant's trial counsel acknowledged that "there was a discussion concerning the $9,000 at the time of the plea negotiations," but that "there was also a discussion that a portion of that might not be appropriate because it was involving the DA's investigators' office."

5

Counsel further stated, "So I'm not saying that [the prosecutor] is incorrect. I just think we remember that a little bit differently."

The trial court stated that it did not "need to resolve the restitution issue right now." The court further stated, "I think generally speaking when talking about a plea bargain of this nature that's the kind of term that should have probably been stipulated to with some precision so we don't have this kind of issue."

The trial court ultimately suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions, including that he serve 90 days in county jail. Regarding the probation officer's recommended probation condition No. 24 concerning eradication and removal costs, the court stated, "The court is reserving as to condition 24. So that is deleted pending a hearing with the exception of the following orders: [¶] Defendant is ordered to pay $4,357.01 to the Department of Fish and Wildlife for the seven officers. [¶] $518.98 to the Department of Fish and Wildlife for the one lieutenant supervisor. [¶] $769.54 for mileage. [¶] $747.60 for the environmental scientist. [¶] $140.71 for travel costs. [¶] $647.27 for the county park rangers. [¶] $799.08 for the county park ranger supervisor. [¶] The court is reserving with respect to the amount of $1,215.82 for the district attorney investigators." The court scheduled a restitution setting hearing for October 2019. The remaining counts were dismissed.

**D.** *Briefing by the Parties Regarding District Attorney Investigator Costs*

Prior to the restitution hearing, defendant filed written opposition to the request for reimbursement of the district attorney investigators. Defendant acknowledged that he "entered a plea agreement to one felony count with the understanding that he would be responsible for the costs of seizing and eradicating the unlawful marijuana grow as well as other remediation associated with his illegal activity." He "concede[d] liability on those issues but contest[ed] any unreasonable charges, as well as those associated with the investigation and prosecution of the case against him." Defendant contended that although section 11470.1 authorized a government entity's recovery of expenses for seizing and

6

eradicating controlled substances, Penal Code section 688.5 precluded a defendant from being ordered to pay the costs of the investigation or prosecution of a criminal case. Defendant argued that based on the latter provision, he could not be required to pay for the district attorney investigators who worked on his case.

The prosecutor filed a memorandum of points and authorities in support of the request for district attorney investigator costs of $1,215.82. In the memorandum, the prosecutor contended that defendant's plea agreement included a provision that, as a term of probation, defendant would pay the costs associated with the eradication of the illegal cannabis operation at his home. The prosecutor indicated that in Monterey County, "an informal task force" consisting of the Department of Fish and Wildlife, the sheriff's office, and district attorney investigators "often assist each other" in dealing with illegal cannabis cultivation. The prosecutor stated that the costs being sought from defendant were for district attorney investigator time "only . . . during the eradication effort." In support of the request, the prosecutor provided a declaration from one of the district attorney investigators who assisted in the eradication of cannabis in this case. The investigator stated that the requested $1,215.82 in costs were "all incurred in the course of the eradication, seizing and destruction of cannabis at [defendant's] property."

### E. *Restitution Hearing*

The restitution hearing was held on October 18, 2019. At the outset of the hearing, the prosecutor indicated that a larger amount – $3,092.40 – was being sought for the cost of eradication by the district attorney investigators at defendant's property.

The district attorney investigator who had submitted a declaration in support of the original request testified at the restitution hearing. He explained that the Department of Fish and Wildlife was the primary investigating agency, and that a total of five district attorney investigators assisted with security, eradication, and "whatever they would need us for that day." The investigator testified that his original estimate was "done on the phone . . . after hours" and "from memory as to who was there," and that he "could not recall at that time

exactly who was present so [he] just left them out." Further, his original calculation only included the investigators' hourly rate without benefits. He stated that the revised cost of $3,092.40 was for all the district attorney investigators who were present during the execution of the search warrant, and that the amount included their rate of pay with benefits.

After hearing argument from defendant, the trial court ordered $3,092.40 payable to the district attorney's office. The court explained that it was "important to note that . . . this is a probation context, not a prison context. . . . Restitution does serve a rehabilitative aspect in a probation context." The court found that the investigators' time was "sort of blended between what might be considered purely a law enforcement investigation and eradication efforts." However, the court believed it would be "unreasonable . . . for law enforcement to operate in a different way simply to have separate and distinct events that would account for restitution." The court found the requested amount of $3,092.40 to be "reasonable and fair."

Defendant filed a notice of appeal from the October 18, 2019 order.

### III.  DISCUSSION

Defendant contends that the trial court abused its discretion in ordering that he pay costs for the district attorney investigators. He also argues that the appellate waiver in his plea agreement does not bar his appeal.

The Attorney General agrees that defendant's appellate waiver does not bar his appeal. The Attorney General contends that the trial court did not abuse its discretion in ordering defendant to pay district attorney investigator costs.

On the issue of the appellate waiver, we do not accept the Attorney General's concession. As we will explain, defendant's appellate waiver bars his appeal. We therefore do not reach the substance of defendant's challenge to the order requiring him to pay district attorney investigator costs.

8

**A.** *General Legal Principles Regarding Recovery of Government Expenses for Eradication of Controlled Substances*

In response to the 1982 amendment of the state Constitution granting crime victims the constitutional right to restitution from defendants (see Cal. Const., art. I, § 28, former subd. (b); Cal. Const., art. I, § 28, subd. (b)(13)), "the Legislature enacted an array of statutes covering restitution or recovery of expenses by crime victims. Among those statutes are Health and Safety Code sections 11470.1 and 11470.2, as well as Penal Code section 1202.4." (*People v. Martinez* (2005) 36 Cal.4th 384, 388 (*Martinez*).)

The purpose of sections 11470.1 and 11470.2 "was 'to require those who engage in illegal drug activities' to repay the costs incurred in seizing and destroying unlawful substances akin to 'the charges imposed under existing law for abating other nuisances.' [Citation.] The bill sought to alleviate the financial burden on law enforcement agencies— especially those in small rural areas—of eradicating marijuana plants and closing clandestine drug labs. [Citation.] By permitting law enforcement to recover its cleanup costs, the legislation sought to ensure that 'those who engage in illegal drug activities' would 'bear the costs of eliminating their abuses.' [Citation.]" (*Martinez*, *supra*, 36 Cal.4th at pp. 388-389.)

Section 11470.1 authorizes a civil action against "[a]ny person who manufactures or cultivates a controlled substance or its precursors." (*Id.*, subd. (a)(1).) "The action may be brought by the district attorney, county counsel, city attorney, the State Department of Health Care Services, or Attorney General." (*Id.*, subd. (d).) "The expenses of seizing, eradicating, destroying, or taking remedial action with respect to, any controlled substance or its precursors shall be recoverable." (*Id.*, subd. (a).)

Alternatively, instead of a civil action, the prosecution may seek pursuant to section 11470.2 the recovery of expenses incurred by the governmental entity "in seizing, eradicating, or destroying the controlled substance or its precursor" by filing a petition in the criminal proceeding "in which the defendant has been charged with the underlying offense."

(*Id.*, subd. (b).)  Section 11470.2 provides that "[i]f probation is granted, the court may order payment of the expenses as a condition of probation."  (*Id.*, subd. (a)(2).)

These provisions – a civil action under section 11470.1 or the recovery in the pending criminal proceeding against the defendant pursuant to section 11470.2 – "are the 'exclusive' means by which a government entity that is not a direct victim of a crime may recoup its costs of eradicating or cleaning up toxic or hazardous substances resulting from controlled substance crimes." (*Martinez*, *supra*, 36 Cal.4th at p. 394.)  The procedural protections provided by these sections may be forfeited, however.  For example, in *People v. Brach* (2002) 95 Cal.App.4th 571 (*Brach*), the probation reports for two defendants recommended that the defendants be required to reimburse the county for eradication expenses pursuant to section 11470.2 as conditions of probation.  (*Brach*, *supra*, at p. 576.)  At sentencing, the defendants did not object to the recommended probation conditions.  (*Ibid.*)  The trial court adopted the probation department's recommendation and imposed the conditions.  (*Ibid.*)  On appeal, the defendants contended that the probation conditions should be stricken because the prosecutor failed to comply with the statutory provisions.  (*Ibid.*)  The appellate court observed that the prosecutor failed to file a petition for eradication expenses among other procedures set forth in section 11470.2 that were not followed.  (*Brach*, *supra*, at p. 577.)  The appellate court concluded, however, that the defendants had waived their rights by failing to assert those rights in the trial court.  (*Id.* at pp. 574, 577.)

**B.** ***General Legal Principles Regarding Appellate Waivers***

"Appellate waivers contained within plea agreements are generally enforceable. 'Just as a defendant may affirmatively waive constitutional rights to a jury trial, to confront and cross-examine witnesses, to the privilege against self-incrimination, and to counsel as a consequence of a negotiated plea agreement, so also may a defendant waive the right to appeal as part of the agreement.' [Citation.] ' "Plea negotiations and agreements are an accepted and 'integral component of the criminal justice system and essential to the

10

expeditious and fair administration of our courts.' [Citations.] Plea agreements benefit that system by promoting speed, economy, and the finality of judgments." [Citations.]' [Citation.] 'Defendants . . . benefit from plea agreements by gaining concessions from the People. [Citation.] The benefits of a plea agreement would be eliminated if courts disallowed the waiver of the right of appeal to which the parties have agreed. [Citation.]' [Citation.]" (*People v. Becerra* (2019) 32 Cal.App.5th 178, 186 (*Becerra*).)

" 'A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.]' [Citation.] Likewise, '[b]ecause waivers of appellate rights are ordinarily found in the context of a plea bargain, the scope of the waiver is approached like a question of contract interpretation—to what did the parties expressly or by reasonable implication agree? [Citations.]' [Citation.]" (*Becerra*, *supra*, 32 Cal.App.5th at pp. 188-189.)

" ' "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.]" . . . "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. [Citations.]" [Citations.]' [Citation.]" (*Becerra*, *supra*, 32 Cal.App.5th at p. 189.)

In *People v. Panizzon* (1996) 13 Cal.4th 68 (*Panizzon*), the California Supreme Court addressed the scope of a sentencing-specific appellate waiver and its effect on a defendant's right to appeal. In *Panizzon*, the defendant pleaded no contest pursuant to a plea bargain that provided for a sentence of life with the possibility of parole, plus 12 years. (*Id.* at p. 73.) In the written waiver and plea agreement, the defendant agreed that he was waiving his " 'right to appeal from the sentence [he would] receive in this case.' " (*Id.* at p. 82.) The defendant later challenged the sentence on the ground that it was disproportionate to the

11

sentences his codefendants had received after him, and that therefore his sentence constituted cruel and unusual punishment. (*Id*. at pp. 74, 85.) The defendant also argued that the sentencing error was unforeseen or unknown at the time of his plea and appellate waiver, and that such future sentencing error was beyond the scope of his waiver. (*Id*. at p. 85.)

The California Supreme Court determined that defendant's claim fell within the scope of the appellate waiver and was not reviewable on appeal. (*Panizzon*, *supra*, 13 Cal.4th at p. 89.) The court explained, "Not only did the plea agreement in this case specify the sentence to be imposed, but by its very terms the waiver of appellate rights also specifically extended to any right to appeal such sentence. Thus, what defendant seeks here is appellate review of an integral element of the negotiated plea agreement, as opposed to a matter left open or unaddressed by the deal." (*Id*. at pp. 85-86.) The court further stated that "both the length of the sentence and the right to appeal the sentence are issues that cannot fairly be characterized as falling outside of defendant's contemplation and knowledge when the waiver was made." (*Id*. at p. 86.) The court found distinguishable cases in which the defendants were not barred from appealing subsequent sentencing errors, as those defendants had made only a general waiver of the right to appeal ("e.g., 'I waive my appeal rights' or 'I waive my right to appeal any ruling in this case' ") and the sentencing issue had been left unresolved by the plea agreements. (*Id.* at p. 85 & fn. 11.)

Subsequently, in *People v. Buttram* (2003) 30 Cal.4th 773 (*Buttram*), the California Supreme Court considered the scope of a plea agreement, whether a certificate of probable cause was needed, and the absence of an appellate waiver. In *Buttram*, the defendant entered his pleas and admissions in exchange "for an agreed maximum sentence, or 'lid' " of six years. (*Id*. at pp. 776, 777, italics omitted.) After the trial court imposed the maximum sentence of six years, the defendant argued on appeal that the court abused its discretion. (*Id*. at p. 779.) The appellate court dismissed the appeal for lack of a certificate of probable cause. (*Id.* at p. 780.)

The California Supreme Court determined that, "absent contrary provisions in the plea agreement itself, a certificate of probable cause is not required to challenge the exercise of individualized sentencing discretion within an agreed maximum sentence. Such an agreement, by its nature, contemplates that the court will choose from among a range of permissible sentences within the maximum, and that abuses of this discretionary sentencing authority will be reviewable on appeal, as they would otherwise be." (*Buttram*, *supra*, 30 Cal.4th at pp. 790-791.)

The *absence* of an appellate waiver was a fact that the California Supreme Court repeatedly referred to in the *Buttram* opinion. (*Buttram*, *supra*, 30 Cal.4th at pp. 776, 777-778, 785, 787.) The court observed that "[n]either the written change-of-plea form initialed and signed by defendant, nor any plea terms discussed in open court, specified that defendant was affirmatively waiving his right to appeal any sentencing issue that might otherwise properly arise within the negotiated maximum." (*Id*. at pp. 777-778, fn. omitted.) The court concluded that the defendant's appeal did not attack the validity of the plea and that no certificate of probable cause was required, because he sought "only to raise issues reserved by the plea agreement, and *as to which he did not expressly waive the right to appeal*." (*Id.* at p. 787, italics added.)

In a concurring opinion in *Buttram*, Justice Baxter, who also authored the majority opinion, emphasized the significance of an appellate waiver by stating, "[T]he parties to a plea agreement should, if possible, *expressly negotiate and resolve* the issue of appealability. A prime reason why we conclude here that [the defendant] may take his appeal without a certificate, and that the Court of Appeal must address it on the merits, is that [the defendant's] plea *is silent on the appealability* of the trial court's sentencing choice." (*Buttram*, *supra*, 30 Cal.4th at p. 791 (conc. opn. of Baxter, J.).) Justice Baxter explained that if the defendant's "bargain had included an express waiver of appeal, a number of consequences would flow," including that "the express waiver of appeal would

13

permit the appellate court to decline to address the defendant's claim on the merits . . . ." (*Id*. at pp. 792, 793 (conc. opn. of Baxter, J.).)

More recently, in *People v. Espinoza* (2018) 22 Cal.App.5th 794 (*Espinoza*), the defendant pleaded no contest with the understanding that she would be placed on probation. (*Id*. at p. 796.) The defendant's written plea form included the following appellate waiver: " 'Even though I will be convicted in this case as a result of my plea, I have the right to appeal the judgment and rulings of the court (e.g.: Penal Code Section 1538.5(m)). I give up my right of appeal.' " (*Id*. at p. 797, boldface omitted.) On appeal, the defendant challenged a probation condition as unreasonable, vague, and overbroad. (*Id*. at p. 798.) The appellate court determined that the defendant "broadly waived her 'right to appeal the judgment and rulings of the court,' " and that, "[b]y its express terms, the waiver include[d] her right to appeal the imposition of probation terms . . . ." (*Id*. at p. 801.) The appellate court dismissed the appeal. (*Id*. at p. 804.)

**C. *Analysis***

We determine that defendant's appellate claim concerning the trial court's purported error in requiring him to pay district attorney investigator costs falls within the scope of his appellate waiver. Defendant's written plea agreement expressly provided that he would be placed on probation, that the payment of "[c]osts for the eradication and removal of cannabis" would be among the "terms of probation," that the "[c]urrently estimated" costs were $9,196, and that those costs "include[d] DFW, Park Ranger and DAI's," with the latter abbreviation apparently understood by the parties to refer to district attorney investigators. In view of the express language of the agreement, the parties clearly contemplated that defendant would be placed on probation with terms that included him reimbursing various entities for eradication and removal costs, including for district attorney investigators, in an amount that was to be determined.

In addition, defendant's plea agreement contained an appellate waiver that applied to all direct or collateral attacks on the sentence or judgment. The agreement expressly

14

provided that defendant waived "*all rights* regarding state and federal writs and appeals. This includes, but is not limited to, the right to appeal [his] conviction, *the judgment*, and any other orders previously issued by this court."  (Italics added.)  Defendant also agreed "*not to file any collateral attacks* on [his] conviction or sentence at any time in the future." (Italics added.)

In view of the express language in the waiver and plea agreement, the parties clearly contemplated that defendant would be placed on probation with terms that included eradication and removal costs for district attorney investigators in an amount to be determined, and they clearly contemplated a waiver of the right to appeal from the "judgment."  A "judgment" includes an order of probation for purposes of a defendant's right to take an appeal.  (Pen. Code, § 1237, subd. (a); accord, *People v. Howard* (1997) 16 Cal.4th 1081, 1087.)  Thus, based on (1) the express references in the waiver and plea agreement to probation terms that included eradication and removal costs for district attorney investigators, and (2) defendant's express waiver of the right to appeal the "judgment" or probation order, we determine that the instant appeal by defendant, which challenges the eradication and removal costs for district attorney investigators, falls within the scope of the appellate waiver.  (See *Panizzon*, *supra*, 13 Cal.4th at pp. 85-86 ["Not only did the plea agreement in this case specify the sentence to be imposed, but by its very terms the waiver of appellate rights also specifically extended to any right to appeal such sentence"]; *Buttram*, *supra*, 30 Cal.4th at pp. 791-793 (conc. opn. of Baxter, J.) [explaining that if the defendant's plea bargain had included an appellate waiver regarding sentencing, then the appellate court could have declined to address the defendant's claim that the trial court abused its discretion in imposing the negotiated maximum sentence]; *Espinoza*, *supra*, 22 Cal.App.5th at p. 801 [determining that the defendant's waiver of her " 'right to appeal the judgment and rulings of the court' " encompassed "[b]y its express terms . . . her right to appeal the imposition of probation terms"].)

15

Defendant contends that he entered only a "limited appellate waiver," and that his appeal does not fall within the scope of the waiver. We are not persuaded by his arguments.

First, defendant contends that an order for payment of eradication costs to government agencies is "not . . . a mandatory part of [his] sentence and thus does not fall within the general waiver of the right to challenge the sentence or judgment on appeal." However, whether such an order is "mandatory" is not relevant to determining whether the order falls within the scope of the waiver. As we have explained, defendant's appellate waiver encompassed any appeal from the "judgment," which includes an order of probation. Defendant's plea agreement contemplated payment of eradication costs as a term of probation. Defendant's appellate challenge to the order requiring payment of the eradication costs is a challenge to the order of probation and thus falls within the scope of his appellate waiver.

Second, defendant contends that "the payment specifically to DAIs [(district attorney investigators)] was unsettled and not material to the agreement. Instead, that term . . . was modified at sentencing."

We disagree with defendant's legal assertions and with his characterization of the record. Whether the payment for district attorney investigators was "unsettled" at the time of the plea agreement is not determinative here. A defendant may waive the future right to appeal a sentence or probation term, even if the specific sentence or probation term has yet to be determined by the trial court. (See *Buttram*, *supra*, 30 Cal.4th at pp. 777-778, 787; *id.* at pp. 791, 792, 793 (conc. opn. of Baxter, J.); *Espinoza*, *supra*, 22 Cal.App.5th at p. 801.)

Further, contrary to defendant's contention that the payment for district attorney investigator costs was "not material to the agreement," the record reflects that the payment *was material* to the plea agreement. The prosecutor's written offer, which was attached and incorporated into the plea agreement, stated that "[t]he following terms of probation *must be accepted*" and included within the list of probation terms the "[c]osts for the eradication and removal of cannabis" including for "DAI's." (Italics added.) Reflecting the significance of

this probation term, the first page of defendant's written plea agreement stated that he was pleading guilty or no contest to count 2, and that he was "enter[ing] this plea *on the following conditions*," which included that he would "receive felony probation" and that the "[c]ourt will award costs of eradication & removal of cannabis . . . ." (Italics added.) Further, at no time during the sentencing hearing did the prosecutor indicate that payment of costs for district attorney investigators was not a material term of the plea agreement. To the contrary, the prosecutor expressed "surprise[]" after defendant's trial counsel objected to district attorney investigator costs. Moreover, the prosecutor agreed to a further restitution hearing on the issue only after the trial court indicated that it had the same recollection as the prosecutor on the issue and that the further hearing "could simply result in an order anyway" in accordance with the prosecutor's recollection of the issue.

In support of his argument that the costs were not material to the plea agreement, defendant cites *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, at page 1302 (*Provost*). In that case, the plaintiff contended that a stipulated settlement was not binding because the parties did not reach an agreement as to material terms. (*Id.* at pp. 1292, 1300-1302.) The appellate court, in addressing the particular terms that the plaintiff complained the parties did not reach an agreement on, stated, "These are not material contract terms but details adjunct to the substance of the agreement. And nonmaterial terms may be negotiated after a basic agreement has been reached. [Citation.]" (*Id.* at p. 1302.) *Provost* does not advance defendant's argument in this case. As we have explained, the issue of district attorney investigation costs, or costs by other government entities, *was* a material term of the plea agreement. The parties clearly did not intend the costs to "be *negotiated* after a basic agreement [regarding the plea] ha[d] been reached." (*Ibid.*, italics added.)

We also reject defendant's contention that the plea agreement, and specifically the provision requiring payment of eradication and removal costs for district attorney investigators, "was modified at sentencing." The record reflects that at sentencing, when the

prosecutor offered a "breakdown" of eradication and removal costs, defendant's trial counsel objected to costs for district attorney investigators and requested a hearing on the issue. The prosecutor expressed "surprise[]" and stated that "part of the plea negotiations was that [defendant] would be responsible for enforcement costs and that number was discussed." The trial court and the prosecutor then had the following exchange:

"THE COURT: Well, I do recall that discussion. *It could simply result in an order anyway. I'm not indicating anything one way or another.* [¶] Do you have a problem with just an order with respect to the other --

"[THE PROSECUTOR]: That's fine.

"THE COURT: -- and we'll come back later." (Italics added.) Defendant's trial counsel later acknowledged that "there was a discussion concerning the $9,000 at the time of the plea negotiations," but that "there was also a discussion that a portion of that might not be appropriate because it was involving the DA's investigators' office." Defendant's trial counsel further stated, "So I'm not saying that [the prosecutor] is incorrect. I just think we remember that a little bit differently." The trial court stated that it did not "need to resolve the restitution issue right now" and scheduled a date for a restitution setting hearing.

Nothing in this exchange between the parties and the trial court at sentencing reflects that the plea agreement was modified regarding imposition of district attorney investigation costs. Rather, the exchange simply reflects that (1) the parties did not agree on a specific amount which, as the plea agreement reflects, was to be determined, and that (2) the matter would be set for a further hearing for the court to make such a determination regarding the particular item of district attorney investigator costs.

To the extent defendant relies on the trial court's "delet[ion]" of a costs provision at sentencing, we do not agree with defendant's contention that this resulted in a modification of the plea agreement. The record reflects that the trial court was "deleting" proposed probation condition No. 24, which the probation officer had recommended in the *probation report*. The court did not delete or otherwise modify the parties' *plea agreement*. To the

18

extent that the court referred to the subject of eradication and removal costs of the various government entities, the record reflects that the court at sentencing ordered defendant to pay specific amounts to the Department of Fish and Wildlife and others, and that the court was "*reserving*" jurisdiction with respect to the payment of costs for the district attorney investigators pending a further hearing on the matter.  (Italics added.)  This did not constitute a modification of the parties' plea agreement.

Third, to the extent defendant contends that his appeal "is limited to challenging the post-judgment restitution order," and that therefore his appeal is not encompassed by the waiver of the right to appeal from the "judgment," we are not persuaded by the argument. As we have explained, the appellate waiver in the parties' plea agreement broadly applies to all state and federal writs and appeals that attack the conviction, sentence, or judgment, which necessarily includes an order of probation.  The plea agreement also expressly contemplated the payment of eradication and removal costs, including for district attorney investigators, as a term of probation.  At sentencing, the trial court expressly stated that it was "reserving" jurisdiction as to district attorney investigator costs after defendant's trial counsel requested a further hearing on the issue so that he could "do some research with regard to DA investigators."  The court ultimately ordered the costs at the later hearing, where it expressly stated that the order was being made in the "probation context."  Under these circumstances, we determine that the appellate waiver, which applies to an order of probation, also encompasses defendant's appeal from the order, made as a part of his probation, requiring payment of district attorney investigator costs.

Accordingly, because defendant's appellate challenge to the order requiring payment of district attorney investigator costs is barred by the appellate waiver in his plea agreement, we will dismiss the appeal.

## IV.  DISPOSITION

The appeal is dismissed.

19

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

*People. v. Bright*
**H047458**